20-2007
*Brown, et al. v. Netflix, Inc., et al.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of May, two thousand twenty-one.

PRESENT:
> DENNIS JACOBS,
> REENA RAGGI,
> SUSAN L. CARNEY,
> > *Circuit Judges.*

_____

TAMITA BROWN, GLEN S. CHAPMAN, JASON T. CHAPMAN,

> *Plaintiffs-Appellants*,

> v.                                                                 No. 20-2007

NETFLIX, INC., AMAZON.COM, INC., APPLE, INC.,

> *Defendants-Appellees.*

_____

FOR APPELLANT:                    DANIEL KNOX, Knox Law Group, P.C., New York, NY.

FOR APPELLEE:                     JAY WARD BROWN, (Joseph Slaughter, *on the brief*), Ballard Spahr, LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Edgardo Ramos, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on May 28, 2020, is **AFFIRMED**.

Plaintiffs-Appellants Tamita Brown, Glen S. Chapman, and Jason T. Chapman are musicians who created and own the copyright for the song "Fish Sticks n' Tater Tots" (the "Song"), which is at issue in this appeal. Plaintiffs sued Defendants-Appellees Netflix, Inc., Amazon.com, Inc., and Apple, Inc., for copyright infringement because the Song is played in a scene in the 2017 film entitled "Burlesque: Heart of the Glitter Tribe" (the "Film"), which is available for viewing on Defendants' respective video streaming platforms.[1] Defendants had no license to perform or display a performance of the Song. In this suit, Plaintiffs did not name as defendants the producers of the Film, the relevant burlesque dancer, or any others involved in the making of the Film.

Defendants jointly moved to dismiss and for judgment on the pleadings under Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure, arguing that the fair use doctrine protected their display of the Film. The district court granted the motion to dismiss as to Netflix and Apple and awarded judgment on the pleadings to Amazon.[2] Plaintiffs now appeal. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

Section 107 of the Copyright Act provides that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including

---

[1] Plaintiffs sued Defendants for directly infringing their right publicly to perform their work under 17 U.S.C. § 106(4), directly infringing their right to reproduce their work under *id.* § 106(1), and contributory and vicarious copyright infringement, and inducement of copyright infringement of those same rights under *id.* §§ 106(1), (4). App'x 27–33 (Compl. ¶¶ 37–79). Although these theories of liability differ slightly, the parties do not dispute that a finding of fair use would be a complete defense to all of Plaintiffs' claims, and for that reason we need not address each theory separately. *See* 17 U.S.C. § 107 (fair use is not infringement of copyright, "[n]otwithstanding the provisions of sections 106 and 106A").

[2] Amazon answered the Complaint on June 22, 2019. Netflix and Apple did not file an answer.

multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. Although the issue is often not resolved until the summary judgment stage, a fair use defense may be "so clearly established by a complaint as to support dismissal." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016).[3] The standard for granting a Rule 12(c) motion for judgment on the pleadings "is identical to that [of] a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). Accordingly, we accept the pleadings' factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

We consider four "nonexclusive factors" in determining whether the use made of copyrighted material is "fair":

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

*TCA Television Corp.*, 839 F.3d at 178 (quoting 17 U.S.C. § 107). The district court concluded that, while the second factor favored neither party, the first, third, and fourth factors weighed in favor of determining that the Defendants made fair use of the Song. It therefore determined that Defendants' use of the Song was fair within the meaning of § 107 and did not infringe Plaintiffs' copyright.

On *de novo* review, we agree with the district court's conclusion of fair use. Our evaluation of the first factor "may be guided by the examples given in the preamble to § 107, looking to whether the use is for criticism, or comment, or news reporting, and the like." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578–79 (1994). The "central purpose" of this task is to determine "whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether

---

[3] Unless otherwise noted, in quoting caselaw this Order omits all alterations, citations, footnotes, and internal quotation marks.

3

and to what extent the new work is 'transformative.'" *Id.* at 579. When the allegedly infringing work "fits the description of uses described in § 107," such as criticism, comment, or scholarship, "there is a strong presumption that factor one favors the defendant." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 477 (2d Cir. 2004).

Here, the documentary character of the Film fits within those uses identified by § 107: The Film provides a commentary on the burlesque art form and its resurgence in Portland, Oregon, as well as an exploration of the artistic process of the group of dancers on whom the Film centers. The Film does not merely re-broadcast the performances; rather, it combines those performances with cultural commentary on "topics such as gender, sexuality, and the artistic process." Appellees' Br. at 25. Indeed, it is only after interviewing one of the dancers about her views on such matters that the Film then shows a part of that dancer's performance wherein she attempts to express these views. It is while documenting this performance that the Film incidentally captures this dancer's use of the Song as brief background accompaniment to her burlesque act. In this context, Defendants' incidental use of the Song is consistent with the Film's nature as a documentary providing commentary and criticism. Accordingly, the Film is entitled to a presumption in favor of fair use with regard to factor one. *See, e.g.*, *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608–12 (2d Cir. 2006) (comparing use of copyrighted images in timeline akin to use of quotations in biography and finding first factor weighed toward finding of fair use); *Ringgold v. Black Ent. Television, Inc.*, 126 F.3d 70, 79 (2d Cir. 1997) (endorsing continued validity of *Italian Book Corp. v. Am. Broad. Cos.*, 458 F. Supp. 65, 71 (S.D.N.Y. 1978), which found fair use by news broadcast of song captured during report on street parade); *Video-Cinema Films, Inc. v. Lloyd E. Rigler-Lawrence E. Deutsch Found.*, No. 04-cv-5332 (NRB), 2005 WL 2875327, at *7 (S.D.N.Y. Nov. 2, 2005) (holding that, although contested secondary use was not transformative, it properly fell within § 107's preamble categories and therefore first factor weighed towards fair use); *Threshold Media Corp. v. Relativity Media, LLC*, No. 10-cv-9318, 2013 WL 12331550, at *7–10 (C.D. Cal. Mar. 19, 2013) (holding documentary's inclusion of copyrighted song, which was played and discussed by documentary subjects, weighed towards fair use under first factor).

Plaintiffs assert that it is premature at this stage of the litigation, during which all inferences are to be drawn in their favor, to conclude that the Film is a documentary depicting real events. Not so. When, as here, the copyrighted and secondary works are incorporated by reference into the pleadings, "the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010). The Film has all the hallmarks of a documentary film, including interviews, commentary interspersed with footage of events, and a narrative voice-over. Further, Plaintiffs did not allege in their Complaint that the Film is anything but a documentary. Their suggestion on appeal that the Film is not a documentary but in fact a scripted creative work that "take[s] the form or style of a documentary, but do[es] not portray real events," Appellants' Br. at 13, is pure conjecture, which we have "no obligation to entertain." *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011).[4]

The third factor, the amount of borrowing, also favors a fair use finding. Only eight seconds of the Song (of 190 seconds total) are heard in the Film. And, although the refrain used may be the "heart" of the Song, a recognizable chorus can be used fairly when use of that segment of the song is "reasonable in relation to the purpose of the copying," here a documentary providing commentary on and criticism of aspects of burlesque as evident in certain dancers' performances. *Campbell*, 510 U.S. at 586–88 (in the context of a parody of a song, "[c]opying does not become excessive in relation to parodic purpose merely because the portion taken was the original's heart"). Plaintiffs insist that the use is not fair because the Film uses more of the Song than necessary, urging that only the phrase "fish sticks" is required to communicate the "'reverse mermaid' transformation" attempted by the dancer, and therefore the second half of the refrain, "tater tots," is excessive. Appellants' Br. at 23. The argument is unpersuasive. The fair use doctrine does not obligate the Film to use the shortest possible snippet to convey its message of commentary and criticism. *See Campbell,*

---

[4] Because Plaintiffs do not here sue the dancer who used the Song in her act or the proprietors of the venue in which she performed, we do not consider whether the dancer's use of the Song was sufficiently transformative as to avoid copyright infringement. *Compare Cariou v. Prince*, 714 F.3d 694, 707–08 (2d Cir. 2013), *with TCA Television Corp.*, 839 F.3d at 179–83.

5

510 U.S. at 586–88; *cf. Cariou v. Prince*, 714 F.3d 694, 710 (2d Cir. 2013) (making point in context of use that is artistically transformative). The dancer's use of the Song is relayed to the audience as captured by the Film, which sought to document the creative process behind developing the "reverse mermaid" routine and then its eventual performance as part of the Film's portrayal of burlesque dancers in Portland. Showing the performance as it happened, including the eight-second snippet of the Song, was reasonably necessary to convey the Film's message.

Finally, the fourth factor—the effect the infringing use has on the potential market for the Song—also weighs in favor of fair use. This inquiry focuses on whether the infringing use "usurps" the market for the original. *Id.* at 708. As the Film contains only an eight-second excerpt of the Song's chorus—rather than the over three-minute complete track—embedded in a documentary film, the intended audience for the Song would be unlikely to purchase the Film "in preference to the original." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 223 (2d Cir. 2015); *see also Lombardo v. Dr. Seuss Enters., L.P.*, 279 F. Supp. 3d 497, 512 (S.D.N.Y. 2017) (stating that there was "virtually no possibility" of usurpation where original work was "a children's book intended for an all-ages audience" and infringing work was "clearly intended for adult audiences"). Plaintiffs contend further that Defendants' infringement, if multiplied, "effectively destroys Plaintiffs' right to demand royalties for their work" as dance music or otherwise in films. Appellants' Br. at 25. Because fair use always results in some loss of royalty revenue, however, we consider only the "challenged use's impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets." *TCA Television Corp.*, 839 F.3d at 186. Even crediting Plaintiffs' assertion that a licensing market exists for the Song as dance music or background music in films—an assertion not contained in the Complaint—the Film's brief use of a small portion of the Song as a component of an event recorded for documentary purposes does not plausibly fall within the traditional or well-developed market for the Song. Accordingly, the fourth factor also weighs in favor of fair use.

* * *

6

We have considered Plaintiffs' remaining arguments and find in them no basis for reversal. For the reasons stated above, the district court's judgment is **AFFIRMED**. Further, Appellants' pending motion to correct the record on appeal is **DENIED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

7